UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE:                    )
                          )    Chapter 7
FRANCES P. TAKES and      )
MARY L. TAKES,            )    Bankruptcy No. 04-04020
                          )
        Debtors.          )


### ORDER RE OBJECTION TO CLAIM OF EXEMPTION FOR HOMESTEAD

This matter came before the undersigned on February 1, 2005 on Objection to Claim of Exemption for Homestead. Attorney Richard Davidson represented Movants LaSalle Bank and Valley Bank. Attorney Janet Hong represented Debtors Frances and Mary Lu Takes. Attorney Bruce Erusha appeared on behalf of Trustee Sheryl Schnittjer. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### STATEMENT OF THE CASE

LaSalle Bank and Valley Bank object to Debtors' homestead exemption. They assert their claim against Debtors predates Debtors' acquisition of the homestead property. Debtors assert the property has been their homestead since 1994, long before they personally guaranteed a loan from the Banks and before the Banks reduced the debt to judgment.

### FINDINGS OF FACT

In May 1999, Debtors personally guaranteed a loan by Valley Bank to an entity named Clover Ridge Place, L.C. Clover Ridge defaulted on the loan and the Banks received judgment against Debtors on the personal guarantee on January 21, 2004 in Iowa District Court for Jackson County. The Banks transcribed the judgment to Linn County on February 18, 2004. The amount of the judgment is $953,659.12.

On March 24, 1994, Debtors entered into an agreement regarding their residence entitled "Entry Fee Garnett Place Townhomes Independent Living Residence Agreement." Debtors

received possession of the townhome at 142 35th St. Dr. SE, Unit No. 4 with an occupancy date of August 1, 1994.  The Agreement states that the "term of residence . . . shall continue for the life of the residents."  The Agreement provides for a "Residency Entrance Fee" of $110,000, and a monthly fee which was initially $300.

By a separate agreement on the same date, Garnett Place Townhomes, L.C. ("GPT, L.C.") agreed that it "will not require an entry fee for the living unit that [Debtors] occupy."  In exchange, Debtors agreed to 1) personally sign a mortgage for Garnett Place, 2) allow their unit to be shown as a "model unit," 3) show units for GPT, L.C. and, 4) use their expertise to make the development project successful.  See Exhibit C. The Banks do not dispute that Debtors have resided at 142 35th St. Dr. SE, Unit No. 4 from August 1994 through the day they filed their bankruptcy petition on October 13, 2004.

In 2003, GPT, L.C.'s management determined that the residences should be converted to condos.  Current residents were given the choice to keep renting or to receive a deed for the property.  Debtors chose to purchase their townhome as a condo.  Mr. Takes testified that other residents wished to receive a deed for their townhomes as condos.  This was prevented, however, by the intervening Chapter 7 bankruptcy petition of Debtors' former business, CRI, Inc., which was filed April 9, 2004.

The closing date for Debtors' purchase of the townhome as a condo was February 28, 2004.  The sale price was $177,300. After deducting the entry fee of $110,000, plus appreciation for 9 years, Debtors were credited with $125,773 towards the purchase price.  Debtors paid the remainder of $51,527 by check dated January 22, 2004.  Debtors received a Warranty Deed for their residence from GPT, L.C. dated February 27, 2004 and recorded March 5, 2004.  Both the 1994 Residency Agreement and the 2004 Warranty Deed are entered into between Garnett Place Townhomes, L.C. (as owner/grantor) and Frank and Mary Lu Takes (as residents/grantees).

The Court notes that Debtor Frank Takes signed the Residency Agreement and the Warranty Deed for GPT, L.C. as its manager.  The record also indicates that Debtors Frank and Mary Lu Takes are President and Secretary of Garnett Place, Inc. which owned 22% of the equity in GPT, L.C.  Debtors are

2

also President and Secretary of CRI, Inc., which is managing member of GPT, L.C.

The Banks assert that Debtors' homestead rights in the condo arose when they received the Warranty Deed in February 2004. This occurred after they entered into the personal guarantee in 1999. The Banks argue that, prior to receiving the Deed, Debtors merely held a lease on the residence for life and any homestead interest in the leasehold did not continue to Debtors' subsequent acquisition of legal title to the condo. They assert that Debtors' legal title in the condo was not a continuation of a prior interest they held under the Residence Agreement or a replacement homestead acquired with the proceeds from a prior homestead.

## CONCLUSIONS OF LAW

In Iowa, "[t]he homestead of every person is exempt from judicial sale where there is no special declaration of statute to the contrary." Iowa Code § 561.16. Under sec. 561.21(1), the homestead may be sold to satisfy debts contracted prior to its acquisition. The Banks, as the objecting parties in interest, have the burden of proving that Debtors' homestead exemption is not properly claimed. Fed. R. Bankr. P. 4003(c); In re Stenzel, 301 F.3d 945, 947 (8th Cir. 2002).

The homestead right in Iowa is peculiarly favored. Gustafson v. Fogleman, 551 N.W.2d 312, 314 (Iowa 1996). The Iowa Supreme Court has recently reiterated:

> The purpose of homestead laws is to promote the stability and welfare of the state by encouraging property ownership and independence on the part of the citizen, and by preserving a home where the family may be sheltered and live beyond the reach of economic misfortune. 40 Am. Jur. 2d Homestead § 4, at 253 (1999). "[T]o secure the benevolent purposes of the homestead laws," we construe these laws broadly and liberally "in favor of the beneficiaries of the legislation." Millsap v. Faulkes, 236 Iowa 848, 852, 20 N.W.2d 40, 42 (1945).

In re Estate of Tolson, 690 N.W.2d 680, 682 (Iowa 2005).

It is the home that is protected by the homestead exemption, not merely the particular interest that the debtor

3

holds.  American Sav. Bank v. Willenbrock, 229 N.W. 298, 297
(Iowa 1929).  The homestead right is not altogether dependent
upon the legal title of the property.  Perry v. Adams, 162
N.W. 817, 820 (Iowa 1917).  The right can exist where the
debtor occupies the property under a bond for a deed, as a
vendee, or where the debtor holds only equitable title or a
leasehold interest.  Id.; Lessell v. Goodman, 66 N.W. 917
(Iowa 1897) (stating a homestead might exist in a leasehold
interest).

     The debtor, after the homestead right accrues, "may pay
for the property, may pay off liens upon it, and the fact that
[the debtor] does so does not bring forward the date from
which [the] right of exemption to the tract as an entirety
accrues."  Willenbrock, 229 N.W. at 300.  The right of
homestead acquisition begins with the debtor's occupancy of
the property.  Rutledge v. Wright, 171 N.W. 28, 29 (Iowa
1919).  A homesteader with imperfect or incomplete title may
thereafter perfect or complete the title to the homestead
property.  Id. at 31.  "Likewise [the homesteader] may improve
[the] homestead and add to its value. The date of the
acquisition of the homestead is not thereby changed."  Id.

     The Banks cite Wertz v. Merritt, 39 N.W. 103 (Iowa 1888),
for the proposition that any homestead right of Debtors prior
to receiving the Warranty Deed in 2004 was terminated and did
not carry over into their recent "fee simple" ownership
interest.  In Wertz, the debtor leased 40 acres from his
father for 20 years prior to his father's death.  Id. at 104-
05.  After his father's death, the debtor was allotted a part
of the land he formerly occupied as a tenant.  Id. at 105.
Conceding that a homestead right may be acquired in a
leasehold estate, the court held the debtor's present
homestead right was not a continuation of the former one.
Id.  Thus, the homestead was subject to the payment of an
intervening judgment.  Id.

     Similar conclusions were reached in Reusch v. Shafer, 41
N.W.2d 651, 658 (Iowa 1950) and Kramer v. Hofmann, 257 N.W.
361, 363 (Iowa 1934).  In Reusch, the debtor had deeded real
estate to his son and daughter, but remained in occupancy
under a lease.  Reusch, 41 N.W.2d at 658.  The court held that
when the son and daughter deeded the property back to the
debtor, he got a new homestead right, subject to an
intervening judgment lien.  Id.  In Kramer, a debtor rented a
farm from his mother.  After his mother's death, the debtor

4

held title as cotenant with his siblings.  <u>Kramer</u>, 257 N.W. at
362.  The court concluded the debtor's homestead right could
not have accrued prior to the death of his mother.  <u>Id.</u> at
364.  Thus, the homestead was not exempt from a debt
contracted prior to the debtor's mother's death.  <u>Id.</u>

<u>Wertz</u> was distinguished in <u>Lennert v. Cross</u>, 244 N.W. 693
(Iowa 1932) (<u>Lennert II</u>) and <u>Foster v. Rice</u>, 101 N.W. 771, 772
(Iowa 1904).  In <u>Foster</u>, the court noted that in <u>Wertz</u>, there
was no continuity between the right which existed in the
tenant and that which accrued to the same person by
inheritance.  101 N.W. at 772.  In <u>Lennert</u>, a father gifted
land to his son, but retained legal title and the right to
rent of $1 per year per acre to support himself and his wife.
<u>Lennert v. Cross</u>, 241 N.W. 787, 789 (Iowa 1932) (<u>Lennert I</u>).
The debtor later received full title by virtue of his father's
will.  <u>Id.</u> at 788.  The court concluded: "His homestead
exemption has been continuous and unbroken and dates from the
time of his original occupancy as his home."  <u>Id.</u> at 789.  It
subsequently held that the findings of fact in <u>Lennert I</u> were
vitally different from those found in <u>Wertz</u>.  <u>Lennert II</u>, 244
N.W. at 693.

## ANALYSIS

Debtors first occupied their residence in August 1994
under the Residency Agreement with GPT, L.C.  This agreement
has characteristics of a lease and of a real estate contract.
Pursuant to the foregoing law, Debtors had a homestead
interest in the residence beginning in August 1994, regardless
that they did not possess full legal title.

The fighting issue is whether Debtors' homestead right
under the Residency Agreement was broken when they received
the Warranty Deed in February 2004.  Debtors occupied the same
residence before and after receiving the Warranty Deed.  The
parties to both the Residency Agreement and the Warranty Deed
are identical: GPT, L.C. and Debtors.  The result of the
February 2004 transaction was that Debtors paid off the former
holder of the legal title and perfected title in themselves.

The Court concludes that, under Iowa law, the date of
Debtors' acquisition of their homestead was not changed or
brought forward by the February 2004 transaction.  Debtors'
original homestead interest in the residence was continuous
and was not broken by their receipt of full legal title

through the Warranty Deed.   Under the circumstances of this case, the Court concludes that Debtors have properly claimed their homestead interest, which arose in 1994, exempt from the Banks' subsequent claim arising from the 1999 personal guarantee.

**WHEREFORE**, the Objection to Claim of Exemption for Homestead filed by LaSalle Bank and Valley Bank is DENIED.

**FURTHER**, Debtors have properly claimed their residence exempt from the claim of the Banks.

**DATED AND ENTERED**:   March 8, 2005.


PAUL J. KILBURG
CHIEF BANKRUPTCY JUDGE